**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


DADJE DAWARA,                   :
                                :   Civil Action No. 10-4131 (DRD)
          Petitioner,           :
                                :
     v.                         :   OPINION
                                :
GREG BARTKOWSKI, et al.,        :
                                :
          Respondents.          :
```

**APPEARANCES:**

Petitioner pro se                Counsel for Respondents
Dadje Dawara                     Jane Deaterly Plaisted
133913C                          Essex County Prosecutor's Office
New Jersey State Prison          Essex County Courts Building
P.O. Box 861                     Newark, NJ 07102
Trenton, NJ 08625


**DEBEVOISE**, District Judge

   Petitioner Dadje Dawara, a prisoner currently confined at New Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Greg Bartkowski and Paula T. Dow.

   For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> At trial, the State presented evidence that on the evening of October 24, 2000, at approximately, 8:00 p.m., three individuals robbed a market on 15th Avenue in Newark. Angel Luna, Sr., (Luna), the store's owner, was in the store with his girlfriend, Rose Rodriguez (Rodriguez), and his eleven-year-old son. Rodriguez was at the cash register and his son was in the basement, doing his homework.
>
> Luna went outside to prepare to close the store for the evening. He observed a blue or green car. He saw two persons in the car and one standing outside. As Luna was returning to the store, he observed the three individuals at the store's entrance. One was armed with a silver pistol. Another sprayed Luna with mace.
>
> Luna was thrown to the ground. One of the intruders told Luna to remain still or he would be shot. Luna instructed Rodriguez to give the intruders the money. Luna's son said that one of the intruders was wearing an army jacket. Rodriguez stated that another intruder was wearing blue jeans with a red mask covering his face from the nose down. After the robbery, the intruders left the store.
>
> Luna said that it took about thirty five minutes for the mace to stop burning his eyes. He then called the police. The police arrived shortly thereafter and Luna informed them that the store had been robbed. He said that the intruders had stolen $550 and some coins. A person outside of the store had observed an automobile at the time of the robbery and wrote down the license plate number on a piece of paper,

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

which he gave to Luna. Luna gave the license plate number to the police.

The State also presented evidence that, on the same evening, at around 8:30 p.m., three individuals robbed a supermarket on Central Avenue in Newark. The owner of the market, Berto Estevez (Estevez), was behind the counter in the rear of the store. A worker, Jose Martinez (Martinez), also was present, along with a customer, Ronnie Saunderson (Saunderson). Estevez saw three persons enter the store and announce, the "was a holdup." Estevez was thrown to the floor. One of the intruders took a chain with several medallions from around his neck.

Another pointed a gun at Martinez and Martinez testified "they were gonna kill" him if he did not open the cash register. The intruder took money from the cash register and $100 from Martinez's wallet. Martinez said that the intruders had masks over their faces. One sprayed Martinez in the face with mace and threw him to the floor. Saunderson was forced at gunpoint to lie on the ground. He told the intruders that he did not have any money. He was sprayed in the face with mace.

At approximately 9:15 p.m., Detective Robert Daniel Moore (Moore) of the Newark Police Department (NPD) and his partner Detective Steven Rivers received a dispatch informing them about a car with the license plate number that Luna had provided the police. The officers saw the car, which was a 1997 green Mitsubishi Galant. They observed three persons in the vehicle.

The police stopped the car at the intersection of 14th Avenue and Littleton Avenue. Defendant, Anderson and Aaron were inside the car. Moore found cash in the car, along with a bracelet with several charms, another charm and a pendant. The police also recovered 232 vials of cocaine from the trunk of the car.

The police brought Luna, his son and Rodriguez to the intersection of 14th Avenue and Littleton. They were shown a car and the three occupants inside. Luna said that it was the same car that he had seen outside his store earlier that evening. The license plate number matched the number he had given to the police. In addition, Estevez identified several items of jewelry recovered from the car as items that were taken from him in the robbery.

3

(Opinion of Appellate Division at 2-5 (March 4, 2010).)

B.  Procedural History

After trial by jury, Petitioner was convicted of first degree robbery, third degree unlawful possession of a weapon, second degree possession of a weapon for unlawful purpose, third degree possession of a controlled dangerous substance, second degree possession of a controlled dangerous substance with intent to distribute, fourth degree unlawful possession of a weapon (mace), third degree possession of a weapon (mace) for unlawful purpose, fourth degree possession of a defaced firearm, and fourth degree possession of hollow point bullets.

Petitioner was sentenced to an aggregate term of forty years of incarceration, with a thirty-four year period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The Superior Court of New Jersey, Appellate Division, affirmed the convictions and sentence.[2]  Petitioner then filed a Petition for Post Conviction Relief ("PCR"), which was denied on the record on April 1, 2008 and an order was entered on April 2, 2008.  The Appellate Division then affirmed the PCR ruling.[3]

---

[2] State v. Dawara, No. A-3903-3 (App. Div. February 10, 2006).

[3] State v. Dawara, No. A-4726-7 (App. Div. March 4, 2010).

Petitioner filed this Petitioner for Writ of Habeas Corpus on August 12, 2010.

## II. 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See

6

Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Simmons v. Beard, 581 F.3d q158, 165 (3d Cir. 2009).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state

7

court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  Claims Regarding Trial Court Errors (Grounds 1, 2, 3)

Petitioner claims that the trial court erred with respect to jury instruction, admission of evidence, and allowing allegedly prejudicial testimony.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise

8

to the level of a deprivation of due process. Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. Keller v. Larkins, 251 F.3d.

1. Jury Instruction

Petitioner asserts that the trial court erred in its jury charge regarding accomplice liability.

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

    As to this issue, the Appellate Court noted:

> "Here, there was no request by defendant to charge a lesser-included offense, and there was no objection to the charge given.
>
> [...]
>
> Here, the alleged accomplices were all charged with the same degrees of the same crimes, and there was no evidence at trial that defendant acted with any different purpose other than that of his co-defendants.  There is evidence that for each of the crimes charged, defendant possessed the specific intent to commit the crimes, and that he was a substantial participant in the commission of these crimes.  Thus, there was no evidence to support a charge of any lesser intent or any lesser-included offenses.
>
> [...]

> Neither the law nor the facts adduced at trial provided any basis for an instruction on a lesser mental state for robbery, or for the charge of a lesser-included offense.

(Opinion of Appellate Division at 6-10 (February 10, 2006).)

In this case, the state courts did not find any error under state law with the charges, and this Court cannot identify any error on the part of the trial court that would rise to the level of a Constitutional violation. Petitioner has not shown that his trial was so prejudiced by the failure to give certain jury charges that the principles of fundamental fairness and due process were violated. Petitioner's conviction did not violate due process and was not fundamentally unfair. As such, relief on this ground is not warranted.

    2. Admission of evidence

Petitioner asserts that the trial judge erred by admitting digital photos into evidence.

As to this issue, the Appellate Court noted:

> Whether evidence should be admitted is a matter left to the sound discretion of the trial court, which decision will be the basis for reversal only where the court misapplies its discretion and that error prejudices the defendant's right to a fair trial. State v. Carter, 91 N.J. 86, 106 (1982). Here, we find no basis in the record for a conclusion that the trial judge misapplied his discretion in admitting the digital photographs.

(Opinion of Appellate Division at 10-11 (February 10, 2006).)

Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

11

Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." As such, relief on this ground is not warranted.

3. Allegedly Prejudicial Testimony

Petitioner alleges that the trial court erred in allowing testimony related to motive for the robberies. Petitioner argues that the testimony was highly prejudicial and violative of N.J.R.E. 404(b) concerning prior bad acts.

The Appellate Court held:

> All relevant evidence is admissible unless it is barred by a specific rule. N.J.R.E. 402. Relevant evidence is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of this action." N.J.R.E. 401.
>
> [...]
>
> Here, the disputed evidence is one statement made by Hamadi Aaron during his testimony that the motive of the robberies was to raise money to bail one of their friends out of jail. Defendant argues that this evidence should not have been admitted because of the connotation of bailing out a friend.
>
> [...]
>
> We find no error in the admission of Aaron's statement. The jury was aware that co-defendant Aaron had pled guilty to the present crime. Therefore, the fact that defendant may have associated with another criminal, beyond Aaron, does not add much, if any, additional prejudice. Given that Aaron's statement was highly probative and relevant on the issue of motive, we find no error in its admission.

(Opinion of Appellate Division at 16-19 (February 10, 2006).)

Here, as noted by the Appellate Division, the testimony was relevant. It cannot be said that Petitioner was deprived of a fair trial by the admission of such evidence. The decision of the Appellate Division is neither contrary to, nor an unreasonable application of, clearly established federal law, nor is it a decision based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on this claim.

Petitioner has pointed this Court to no Supreme Court precedent in support of his position that the trial court erred in the above referenced instances. All grounds related to trial court error will be denied.

B.  <u>Claims Regarding Ineffective Assistance of Counsel (Grounds 4,5)</u>

Petitioner argues ineffectiveness of counsel at both the trial and appellate levels.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional

13

assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the

habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

In this case, the state courts examined and rejected Petitioner's numerous ineffective assistance of counsel claims. A review of the state court record reflects that Petitioner was not denied effective assistance of counsel.  This Court notes that the Appellate Division, in its March 4, 2010 Opinion, examined Petitioner's individual claims regarding alleged ineffective assistance of counsel and concluded that Petitioner

was not denied effective assistance of counsel on any of the grounds raised.  Petitioner cites to no evidence to suggest that but for counsel's unprofessional errors, the outcome would have been different.  Since Petitioner's claims on this issue are without merit, all claims regarding ineffective assistance of counsel will be denied.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

16

debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## V.   CONCLUSION

For the reasons set forth above, the Petition must be denied. An appropriate order follows.

                                           ***s/ Dickinson R. Debevoise***
                                           Dickinson R. Debevoise
                                           United States District Judge

Dated: August 17, 2011